**FBFG | Finkelstein, Blankinship, Frei-Pearson & Garber, LLP**

Andrew G. Finkelstein, P.C. (NY & NJ) *
D. Greg Blankinship (NY & MA)
Jeremiah Frei-Pearson (NY)
Todd S. Garber (NY & CT)
───────────────
Bradley F. Silverman (NY)
Antonino B. Roman (NY)
Andrew C. White (NY)
John Sardesai-Grant (NY)
Chantal Khalil (NY)
*Of Counsel*
Duncan W. Clark (NY)
George M. Levy (NY)
Robert J. Camera (NY & NJ)
Joseph P. Rones (NY)
Ronald Rosenkranz (NY) *

George A. Kohl, II (NY & MA)
Andrew L. Spitz (NY)
Elyssa M. Fried-DeRosa (NY)
James W. Shuttleworth, III (NY)
David E. Gross (NY & NJ) *
Mary Ellen Wright, R.N. (NY) *
Kenneth B. Fromson (NY, NJ & PA) *
Nancy Y. Morgan (NY, NJ & PA)
Lawrence D. Lissauer (NY)
Victoria Lieb Lightcap (NY & MA) *
Ann R. Johnson (NY & CT)
Marshall P. Richer (NY)
Edward M. Steves (NY)
Kara L. Campbell (NY & CT)
Marie M. DuSault (NY)
Melody A. Gregory (NY & CT)

Elizabeth A. Wolff (NY & MA)
Robert E. Borrero (NY)
Christine Khalili-Borna Clemens (NY & CA)
Brian D. Acard (NY)
Vincent J. Pastore ( NY & NJ )
Amber L. Camio (NY)
Christopher R. Camastro (NY & NJ)
Cynthia M. Maurer (NY & NJ)
Michael Feldman (NY & NJ) *
Raye D. Futerfas (NJ)
Linda Armatti-Epstein (NY)
David Akerib (NY)
Frances M. Bova, R.N. (NY & NJ)
Gustavo W. Alzugaray (NY)
Sharon A. Scanlan (NY & CT)
Marc S. Becker (NY)

Antonio S. Grillo (NY & NJ)
Narine Galoyan (NY)
Jonathan Minkove (NJ & MD)
Crystal Dozier (NY & NJ)
Vincent J. Rossillo (NY)
Pamela Thomas (NY & CT)
Donald A. Crouch (NY & CT)
Karen O'Brien (NY)
David Stauber (NY)
Jennifer Safier (NY & NJ)
Thomas P. Welch (NY)
Annie Ma (NY & NJ)
Howard S. Lipman (NY)
Noreen Tuller, R.N. (NY)
Cristina L. Dulay (NY & NJ)
Justin M. Cinnamon (NY & CT)

Robin N. D'Amore (NY)
Nicole Murphy (NY)
Rodrigo Arcuri (NY)
Kevin D. Burgess (NY)
Warren C. George (NY)
Sarah Vulcano (NY)
Krista Rose (NY & NJ)
Yola Ghaleb (NY)
Marvin Anderman, P.C. (NY)
Frank R. Massaro (NY)
Kenneth G. Bartlett (CT & NJ)

* The Neurolaw Trial Group

September 7, 2017

**VIA ECF**
Hon. Kenneth M. Karas, U.S.D.J.
United States Courthouse
300 Quarropas Street
White Plains, New York 10601-4150

   Re:   *Tardibuono-Quigley v. HSBC Mortgage Corp. (USA)*, **Case No. 15 Civ. 6940 (KMK)**

Dear Judge Karas:

   We represent plaintiff Dawn Tardibuono-Quigley ("Plaintiff") in the above-entitled putative class action. Pursuant to Local Civil Rule 37.2, we respectfully request a pre-motion conference in advance of a motion to compel production of documents and data, answers to interrogatories, and proper initial disclosures. In the June 20, 2017 Case Management and Scheduling Order (Dkt. 80), the Court directed Plaintiff to file a motion for class certification no later than October 15, 2017. Since the Court issued that Order, Plaintiff has diligently sought discovery necessary for a class certification motion. However, defendant HSBC Mortgage Corp. (USA) ("HSBC") has repeatedly delayed and obstructed the discovery process. Plaintiff is forced to bring this motion so that she can obtain necessary discovery for her forthcoming class certification motion.

   HSBC has refused to answer any of Plaintiff's interrogatories, refused to make proper initial disclosures, and refused to produce almost any of the documents requested by Plaintiff. Indeed, although this is a putative class action, HSBC's document production has been almost exclusively limited to documents only relating to Plaintiff's individual account. Moreover, in violation of the Federal Rules and the Local Rules, HSBC asserts boilerplate objections to almost every document request and interrogatory without any specificity as to the basis for those objections. In actuality, there is no merit to those objections.

   As the Court is aware, Plaintiff alleges that HSBC engages in the practice of needlessly ordering repeated property inspections ("PIs") and broker price opinions ("BPOs") after mortgage defaults. Mortgagors are then charged fees for these unnecessary PIs and BPOs. The process of ordering PIs or BPOs is automated and performed by the "Lender Processing Services" or "LPS" computer system. Computer-generated lists of properties are immediately forwarded to outside vendors that perform the PIs and BPOs, the vast majority of which are unnecessary. This practice, *inter alia*, violates form security agreements used by HSBC that preclude HSBC from taking such unneeded measures. This deceptive practice also results in the assessment of fees to borrowers

Page 2

who are unaware that they are being repeatedly charged for unnecessary services.

A Rule 26(f) conference was held on June 5, 2017. Two days later, Plaintiff served document requests and interrogatories. HSBC then requested a 30-day extension. Concerned about the class certification deadline, Plaintiff reluctantly agreed on the condition that, by July 21, 2017, a core group of key documents be produced so that a Rule 30(b)(6) deposition of HSBC could be held the first week of August. Those documents included: all policies and procedures of HSBC and its outside servicer, PHH Mortgage Corp. ("PHH"), relating to PIs and BPOs, assessed fees, and the apportionment of payments among principal, interest, and assessed fees; as well as documents sufficient to describe the operations and database structure of the LPS system.

On July 21, 2017, HSBC served responses to Plaintiff's first sets of interrogatories and document requests (Exhibits A and B). While HSBC served 2,691 pages of documents, all but 48 of them specifically related to Plaintiff's individual account. HSBC did not produce any documents relating to how payments are apportioned. It also did not produce documents relating to the LPS system, and now claims that it does not have a single manual, guide, or scrap of paper that describes how this complex system works. The data contained in the LPS system is critical to Plaintiff's class certification motion and HSBC's position is not plausible. Further, other than the aforementioned 48 pages, HSBC has not produced any documents relevant to HSBC's alleged deceptive business practices. Rather, it has asserted improper boilerplate objections to requests for all such documents. Exhibit B. On August 7, 2017, HSBC also asserted the same boilerplate objections to Plaintiff's second set of document requests. Exhibit C. Almost all of HSBC's responses to Plaintiff's document requests include the specific objections that the request at issue is "vague," "ambiguous," "overly broad," "unduly burdensome," "harassing," and "seeks documents that are neither relevant to the parties' claims or defenses nor proportional to the needs of the case." Exhibit B. In violation of Rule 34(b)(2)(B), HSBC offered no further specificity. HSBC also objects that the request "seeks documents that contain confidential, proprietary business information." That objection is inapposite in light of the protective order entered by the Court. Dkt. 82.

HSBC also asserts improper boilerplate objections and refuses to answer *any* interrogatories. Exhibit A. These include interrogatories seeking the identities of HSBC personnel with responsibilities relating to PIs and BPOs, as well as descriptions of relevant databases and computer systems. With respect to its initial disclosures, HSBC has refused to identify any witnesses or documents relating to the broader allegations regarding HSBC's practice of assessing fees for unneeded PIs and BPOs. Exhibit D.

Among other things, Plaintiff seeks LPS data in the possession of HSBC and of its agent PHH (to which HSBC has direct access and a contractual right to obtain from PHH) concerning PIs and BPOs, including such pertinent information as: which mortgagors were assessed PIs and BPOs; how often PIs were conducted; whether PIs were conducted when a mortgagor was in contact with HSBC or was making partial payments (showing a PI was not needed to determine occupancy), or where prior PIs indicated that further PIs would not yield evidence of vacancy; how often BPOs were ordered; whether BPOs were ordered for an impending foreclosure sale or similar real estate transaction (the only reason a BPO might be necessary); the dates and amounts of assessed fees; and other pertinent data that can be used to identify class members and whether (and to what extent) a mortgagor was injured by the assessment of a fee for an unnecessary PI or BPO. HSBC's Rule

Page 3

30(b)(6) witness testified that such data exists and is extractable from the LPS system.[1]

Plaintiff also seeks, *inter alia*: 1) all mortgage agreement forms used by HSBC that require HSBC to only assess fees for services such as PIs and BPOs that are actually needed or necessary (so that the scope of the putative classes can be determined); 2) documents discussing the meaning or interpretation of such needed or necessary provisions; 3) policies and procedures of PHH and other vendors regarding PIs and BPOs; 4) agreements with PHH and other vendors; 5) communications with PHH and other vendors regarding the performance of PIs and BPOs; 6) agreements with Black Knight Financial Services, which provides the LPS system; 7) documents regarding the operation, maintenance, database structure, and applications of the LPS system, including any guides, manuals, or data dictionaries; 8) documents sufficient to show how payments are apportioned among principal, interest, PI and BPO fees, and other amounts owed; 9) documents sufficient to show profits, revenues, and costs relating to PI and BPO fees, as well as how HSBC accounts for such fees; 10) the precise criteria used by HSBC and its agents to determine on which properties PIs and BPOs are performed; 11) the identification of personnel with responsibilities relating to PIs and BPOs or to the use or maintenance of computer systems with data pertaining to PIs and BPOs (including any organizational charts); 12) communications with governmental agencies specifically regarding PIs and BPOs; and 13) data and document retention policies.

On August 14, 2017, Plaintiff sent a detailed letter to HSBC, requesting that the parties promptly meet and confer regarding these and other deficiencies later that week. Exhibit E. After receiving no response, on August 17, 2017, Plaintiff again requested times for a meet and confer. On August 18, 2017, HSBC stated that it was working on a "written response" that it wanted to send before any meet and confer. The next day, due to the looming class certification deadline, Plaintiff demanded that a meet and confer take place no later than the following Monday. That Monday (August 21, 2017), HSBC stated that it could not meet and confer until Friday, August 25, 2017. On August 25, 2017, HSBC stated that it actually would not be available until the following week. HSBC purported to be ready to meet and confer on August 29, 2017, but, during a call on that date, it represented that it would not be prepared to fully meet and confer until September 6, 2017, *inter alia*, because it needed additional time to draft its written response. A written response (Exhibit F) was ultimately sent on September 6, 2017 (over three weeks after Plaintiff's August 14, 2017 letter). It asserted that HSBC was standing by its objections. During the September 6 call, HSBC, again, refused to commit to producing the sought documents or interrogatory answers. It also refused to complete the meet and confer until the following week.

Plaintiff can wait no longer. Her motion for class certification is due in a little over one month and HSBC has engaged in a clear effort to obstruct Plaintiff's discovery efforts. HSBC should be compelled to produce the requested documents and data, answer all interrogatories, and provide proper initial disclosures by no later than September 18, 2017. Indeed, even if HSBC does so, it will still be difficult for Plaintiff to review all this information, take necessary additional depositions, and prepare class certification papers by October 15, 2017. For all these reasons, Plaintiff respectfully requests a conference with the Court to address this matter.[2]

---

[1] Plaintiff proposed that HSBC merely produce a sampling of LPS data for purposes of class certification. HSBC, however, refuses to produce *any* LPS data other than data pertaining to Plaintiff's individual loan.

[2] Should the Court direct Plaintiff to file a discovery motion, because of the number of discovery requests at issue and the requirements of Local Rule 37.1, Plaintiff also respectfully requests that she be permitted to file an enlarged memorandum in order to be able to include verbatim quotations of the approximately 58 discovery requests at issue.

Page 4

                                            Respectfully submitted,

                                            Bradley F. Silverman

Encl.

cc:     All counsel of record (via ECF)